**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BENJAMIN BERGER, individually and on behalf of all other similarly situated and the general public, *Plaintiff-Appellant*, <br><br> v. <br><br> HOME DEPOT USA, INC., a Delaware Corporation, DBA The Home Depot, *Defendant-Appellee*. | No. 11-55592 <br><br> D.C. No. 8:10-cv-00678-SJO-PLA <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
August 28, 2013—Pasadena, California

Filed February 3, 2014

Before: Ronald M. Gould and Johnnie B. Rawlinson, Circuit Judges, and Ivan L.R. Lemelle, District Judge.[*]

Opinion by Judge Gould

---

[*] The Honorable Ivan L.R. Lemelle, District Judge for the U.S. District Court for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Jurisdiction / Class Certification

The panel affirmed the district court's stipulated dismissal with prejudice of plaintiff's putative class-action claims against Home Depot, following the district court's denial of plaintiff's motion for class certification.

The panel held that there was appellate jurisdiction under 28 U.S.C. § 1291 because, in the absence of a settlement, a stipulation that leads to a dismissal with prejudice does not destroy the adversity in that judgment necessary to support an appeal.

The panel affirmed the denial of class certification because the district court did not abuse its discretion in holding that the proposed classes that plaintiff was capable of representing did not meet the requirement that common questions predominated over individual issues under Fed. R. Civ. P. 23(b)(3), and that was the only sub-part of Rule 23(b) on which plaintiff relied.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Taras P. Kick (argued), The Kick Law Firm, Santa Monica, California; Thomas A. Segal, The Kick Law Firm, Los Angeles, California, for Plaintiff-Appellant.

Allan E. Ceran, Burke, Williams & Sorenson, LLP, Los Angeles, California; Dwight J. Davis, S. Stewart Haskins II (argued), and Jonathan R. Chally, King & Spalding LLP, Atlanta, Georgia, for Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

Benjamin Berger appeals from the stipulated dismissal with prejudice of his putative class-action claims against Home Depot. He alleges that Home Depot automatically imposed a ten percent surcharge for a damage waiver on tool rentals in its California stores, and although that fee was to be optional, Home Depot's failure to inform customers of their ability to decline the surcharge was a violation of California's Unfair Competition Law, the California Consumer Legal Remedies Act, and common-law theories of unjust enrichment and money had and received. Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code § 1770.[1] We have jurisdiction under 28 U.S.C. § 1291 because, in the absence of a settlement, a stipulation that leads to a dismissal with

---

[1] Berger's original complaint included other state law claims, but the additional claims were dismissed under Fed. R. Civ. P. 12(b)(6) before the class certification phase by the district court. That decision was not appealed, so these other claims are not before us here.

prejudice does not destroy the adversity in that judgment necessary to support an appeal. We affirm the denial of class certification because the district court did not abuse its discretion in holding that the proposed classes that Berger is capable of representing do not meet the requirement that common questions predominate over individual issues under Fed. R. Civ. P. 23(b)(3), and that was the only sub-part of Rule 23(b) on which Berger relied.

# I

The District Court denied Berger's motion for class certification, concluding that the proposed class and subclasses were not ascertainable and that Berger did not meet the commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure ("Rule") 23(a). Having rejected certification on grounds of ascertainability of the class and on grounds that Rule 23(a) was not satisfied, the District Court at first recited that it declined to reach the requirements of Rule 23(b)(3), but then discussed those requirements and concluded, "Accordingly, because independent issues predominate and it is not clear that class action is a superior means of adjudication, Plaintiff's Motion fails for the additional reason that he cannot satisfy the requirements of Rule 23(b)(3)."

Berger then stipulated with Home Depot to dismiss the action with prejudice, noting his intent to appeal the denial of class certification. In the stipulation, Home Depot contested his ability to appeal. The district court dismissed the action under Rule 41(a)(2), and Berger filed a timely notice of appeal.

The district court had jurisdiction over Berger's complaint under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the parties met minimal diversity and the amount in controversy exceeded $5 million. We have jurisdiction under 28 U.S.C. § 1291 because a dismissal of an action with prejudice, even when such dismissal is the product of a stipulation, is a sufficiently adverse – and thus appealable – final decision.

Home Depot challenges our jurisdiction, relying on our published order in *Seidman v. City of Beverly Hills*, 785 F.2d 1447 (9th Cir. 1986). In *Seidman*, we concluded that we had no jurisdiction to hear an appeal from a stipulated dismissal of a putative class action after the lead plaintiff settled his individual claims against the defendant. *Id.* at 1447–48. However, *Seidman* does not control here. As *Seidman* correctly noted, a final judgment must be adverse to a party in order to be appealable. *Id.* at 1448. While a stipulated dismissal pursuant to a settlement does not have the adversity required for appellate jurisdiction, absent a settlement, a stipulation alone does not destroy that adversity. *See Coursen v. A.H. Robins, Co., Inc.*, 764 F.2d 1329 (9th Cir. 1985); *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995) (distinguishing *Seidman* and holding that "plaintiffs may appeal from a voluntary dismissal with prejudice, at least where the plaintiff is not acting pursuant to a settlement agreement intended to terminate the litigation."); *Omstead v. Dell, Inc.*, 594 F.3d 1081,1085 (9th Cir. 2010) (concluding that there was appellate jurisdiction in a class action case after a dismissal pursuant to Rule 41(a)(2)); *Laczay v. Ross Adhesives*, 855 F.2d 351, 354 (6th Cir. 1988) (collecting cases from various circuits for the same proposition). A leading procedural treatise also takes the position that finality for appeal purposes can be achieved in this manner. *See* 7B

Charles Allan Wright, Arthur R. Miller, & Mary Kay Kane,
Federal Practice & Procedure § 1802 (3d ed. 2005):

> The sixth method of obtaining review
> following a court order eliminating the
> class-action allegations is tactically risky. If
> the district court strikes the class-action
> designation with leave to amend so that the
> action may proceed on an individual basis, the
> party seeking class treatment may refuse to do
> so and allow the court to enter a final
> judgment dismissing the complaint with
> prejudice. An appeal then can be taken since
> the adjudication is final and falls within
> Section 1291. However, this procedure is a
> dangerous one. If the district court's order is
> sustained on appeal, plaintiff may be deemed
> to have forfeited the right to present the merits
> of the claims by insisting on a review of the
> class-action question.

(Internal citations omitted).

Here, there is no allegation that the parties have entered
into a settlement. After receiving the district court's denial of
class certification, Berger voluntarily stipulated to the
dismissal of his complaint with prejudice so as to reach a
final judgment. We conclude that this stipulated dismissal is
sufficiently adverse to his interests to allow him to appeal.
Concluding that we have jurisdiction over this appeal, we
next address the merits of the district court's denial of class
certification.

## II

### A

Although Berger filed four distinct legal claims, which are considered separately below, each claim is based on the same set of facts. When Home Depot rents tools to customers, it offers a "damage waiver." If purchased, the damage waiver allows the customer to avoid liability if a tool is damaged during the period of the rental. Berger alleges that when he rented a tool from Home Depot in April of 2004, he purchased the damage waiver without notice that the waiver was optional. Berger further alleges that Home Depot does not tell customers that this waiver is an optional add-on. He claims that the cost of the waiver is automatically added to the rental price by Home Depot's computer system. Home Depot does not deny that its computers default to adding the damage waiver to a customer's receipt, but says that customers are told of the optional nature of the waiver in three ways: 1) by the sales associate, 2) by signs posted in Home Depot stores, and 3) by the language of the final sales contract. Berger contests this by alleging that as a matter of policy, Home Depot employees are not trained to inform customers of the optional nature of the waiver, and in practice, even if its policy is to make such a disclosure, the disclosures are not made.

A salient fact in our view is that over the span of time covered by this lawsuit, Home Depot has used five different versions of its tool rental agreement (Version 1: 2002–05; Version 2: March 2005–May 2006; Version 3: June 2006–August 2008; Version 4: August 2008–April 2010; and Version 5: April 2010–present), each of which discussed the damage waiver in a different way. To respond to these

changes, Berger proposed subdividing his action into three subclasses, with the first to include those who rented tools from July 2002 to February 2005, the second from "March 1, 2005 to June 1, 2006 to the present," and the third from June 1, 2006 to the present.

## B

We review denials of class certification for abuse of discretion. *Stearns v. Ticketmaster*, 655 F.3d 1013, 1018 (9th Cir. 2011) (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010)). We review the discretionary determinations that supported that denial under the same standard. *Id.* (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010)). Where the denial was supported by factual findings, we review those findings for clear error. *Id*. A district court abuses its discretion when it "relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them." *Wolin*, 617 F.3d at 1171. In addition, "an error of law *is* an abuse of discretion." *Yokoyama*, 594 F.3d at 1091 (emphasis in original). However, "we may sustain the court's ruling [on class certification] on any ground supported by the record." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Although it was decided in a different context, that of denial of a motion for a new trial, we think that our circuit's en banc decision in *Hinkson* sheds light on how we should apply the abuse of discretion standard here. *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013). *Hinkson* holds that the "abuse of discretion test requires us first to consider whether the district court identified the correct legal

standard for decision of the issue before it. Second, the test then requires us to determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc); *see also id.* at 1261–63.

## C

Before turning to the merits of Berger's claims, we address Berger's proposed subclasses. Because Berger only alleges that he took part in one transaction, in April of 2004, he is not a member of subclasses two or three, which are defined as beginning in March 2005 and June 2006, respectively.[2] Because he is not a member of those subclasses, Berger cannot prosecute claims on their behalf. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class.") (internal quotation marks omitted); *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (holding that subclasses must be dismissed because "the fundamental requirement that the representative plaintiff must be a member of the class he represents" was not met). For this reason, we affirm the district court's denial of class certification for Berger's proposed subclasses two and three with respect to all four causes of action.

---

[2] Presumably, subclass two was intended to run from March 2005 to June 2006, rather than "to the present" as it was described in Berger's motion. However, the precise end-date of subclass two is irrelevant because, no matter the closing time, Berger's sole transaction took place before its opening. He is not a member of subclass two under any reading of its scope.

## D

We turn to the requirements of Rule 23, which are the focus of our opinion. A putative class-action plaintiff has the burden of showing that his or her claim meets the requirements of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A class must meet "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The district court held that Berger's proposed classes were sufficiently numerous, and Home Depot does not challenge that ruling here. However, Berger appeals the district court's conclusion that his classes fell short on each of the remaining requirements of 23(a) and 23(b).

Berger argues that each of his proposed classes fall under Rule 23(b)(3), which requires him to "demonstrate the superiority of maintaining a class action and show 'that the questions of law and fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)). To meet this requirement, the common questions must be "a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication." *Id*. (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (1998)).

Although the district court's order that we are reviewing here did not do so, we must analyze each of the plaintiff's claims separately. *Erica P. John Fund, Inc., v. Halliburton Co.*, — U.S. —, 131 S. Ct. 2179, 2184, 180 L.Ed.2d 24 (2011) ("Considering whether questions of law or fact

common to class members predominate begins, of course, with the elements of the underlying cause of action.") (internal quotation marks omitted). Each potential class must be analyzed on its own merits, with consideration given to the elements of the claim at stake.

**1**

California's Unfair Competition Law (UCL) bans "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Unlike common-law fraud claims that focus on the victim's reliance or damages, the UCL focuses on the perpetrator's behavior: "to state a claim under either the UCL or the false advertising law . . . it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 207 P.3d 20, 29–30, 93 Cal. Rptr. 3d. 559, 569–70 (2009). Actual falsehood, the perpetrator's knowledge of falsity, and perhaps most importantly, the victim's reliance on the false statements – each of which are elements of common-law fraud claims – are not required to show a violation of California's UCL. *Id.*; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020–21 (9th Cir. 2011).

However, the question of likely deception does not automatically translate into a class-wide question. *See Stearns*, 655 F.3d at 1020 ("We do not, of course, suggest that predominance would be shown in every California UCL case. For example, it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant."). In two recent cases, we have held that class certification of UCL claims is available only to those class

members who were actually exposed to the business practices at issue. *Stearns*, 655 F.3d at 1020–21; *Mazza*, 666 F.3d at 595–96. In *Stearns*, we considered a claim against a website that automatically enrolled its customers in a program that charged them a monthly fee. *Stearns*, 655 F.3d at 1017–18. This decision relied heavily on the California Supreme Court's affirmation of a class action against cigarette companies based on their decades of denials regarding the addictive nature and health risks of smoking. *Id.* at 1020 (quoting *Tobacco II*, 46 Cal. 4th at 312). In *Mazza*, we reversed class certification on a claim against a car company that allegedly made deceptive and misleading claims about a particular brake system. *Mazza*, 666 F.3d at 585–88. In distinguishing *Mazza* from *Stearns* (and *Tobacco II*), we relied on two crucial facts about Honda's advertising program, which was the source of the alleged violation in the litigation: first, that it "f[e]ll short of the extensive and long-term fraudulent advertising campaign at issue in *Tobacco II*"; and second, that "its advertising materials do not deny that limitations [to the brake system] exist." *Id.* at 596. In both breadth and content, it was "unreasonable to presume" that all class members were exposed to Honda's misleading statements, and that without such exposure, consumers were not likely to be deceived. *Id.* (citing *Pfizer, Inc. V. Superior Court*, 182 Cal. App. 4th 622, 632, 105 Cal. Rptr. 795 (Cal. Ct. App. 2010) and *Davis-Miller v. Automobile Club of Southern California*, 201 Cal. App. 4th 106, 125, 134 Cal. Rptr. 3d 551 (2011)).

This case is similar to *Mazza*. Berger has not alleged that all of the members of his proposed class were exposed to Home Depot's alleged deceptive practices – and in fact, he has alleged the opposite. Each of the five contracts used by Home Depot requires an independent legal analysis to

determine whether the language and design of that contract did or did not suffice to alert customers that the damage waiver was an optional purchase, and thereby did or did not expose that group of customers to a potentially misleading or deceptive statement. It was logical, plausible, and supported by the record for the district court to determine that any common questions shared by Berger's primary class do not predominate over the individual questions of contract interpretation. Fed. R. Civ. P. 23(b)(3); *Hinkson*, 585 F.3d at 1251. Because it was not an abuse of discretion to conclude that Rule 23(b) was not satisfied in any respect, we affirm the district court's dismissal of the UCL claim with respect to the primary class.

As for Berger's subclass one, each member of which rented tools under Home Depot's first contract, Berger similarly has not alleged that each individual was exposed to the same misrepresentations or deceptions. The parties contest the existence and form of any signs in Home Depot stores that alert customers to the optional nature of the damage waiver before April of 2005 – which includes the duration of subclass one. This variance over time and among the different Home Depot locations throughout California is a crucial issue, which the district court reasonably held must be resolved on an individual rather than a class-wide basis. Further, any oral notice given by Home Depot employees about the optional nature of the damage waiver during a particular rental transaction would necessarily be a unique occurrence. It was not an abuse of discretion for the district court to determine that maintaining a cause of action based on those statements would require each individual consumer to show that he or she had personally been exposed to misleading information. *See In re LifeUSA Holding, Inc.*, 242 F.3d 136, 145–46 (3rd Cir. 2001) (holding that individual

questions predominated over common issues in a putative class action based on multiple independent unscripted interactions); *Wang v. Chinese Daily News*, 709 F.3d 829, 835 (9th Cir. 2013) (noting that it is an abuse of discretion to certify a class based on policies without considering individual issues), *Davis-Miller*, 201 Cal. App. 4th at 121 ("[W]hen the class action is based on alleged misrepresentations, a class certification denial will be upheld when individual evidence will be required to determine whether the representations at issue were actually made to each member of the class."). For these reasons, we affirm the dismissal of Berger's UCL claims as applied to his proposed subclass one.

**2**

California's Consumer Legal Remedies Act (CLRA) provides a cause of action for "unfair methods of competition and unfair or deceptive acts or practices" in consumer sales. Cal. Civ. Code § 1770. Unlike the UCL, the CLRA demands that each potential class member have both an actual injury and show that the injury was caused by the challenged practice. *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 155–56, 104 Cal. Rptr. 3d 329, 337 (2010). However, if a "material misrepresentation ha[s] been made to the entire class, an inference of reliance arises as to the class." *Stearns*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83, 95 (2009)).

While materiality is not at stake here – the price of a tool rental being an undeniably material term – the issue is whether the allegedly misleading statements were actually made to the consumers in the class. Because the contracts used by Home Depot at different times contained distinct

terms, the question of whether a material misrepresentation was made to the entire class requires an individualized determination that in our view the district court reasonably found predominates over any common questions, thereby compelling us to affirm its dismissal of the CLRA claim for the primary class. Because the signs and oral representations are a fundamental part of the alleged misrepresentation, in that explicit signs or explicit verbal advice would negate the claimed misrepresentation, the district court sensibly held that the individualized determination of the nature of those statements supported denial of class certification of the CLRA claim for Berger's proposed subclass one. This was not an abuse of discretion.

### 3

Berger's common law claims also are not susceptible to class treatment. The elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000). This equitable test does not turn merely on the transfer of money or other benefits from one party to another – it requires injustice. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) ("The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.") (quoting *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 15 Cal. Rptr. 2d 173, 176 (1992)). Money had and received is a form of restitution that applies when the unjust enrichment occurred thanks to a contract or other transfer of "a definite sum." *See Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d

1031, 1047–48 (N.D. Cal. 2010) (citing California cases regarding money had and received).

Whether Home Depot's receipt of funds for the damage waiver was unjust or inequitable, thereby justifying restitution, depends on whether Home Depot told its tool rental customers that the waiver was an optional product. This determination, as explained above, necessarily rests on individualized determinations about the language of the contract signed by the customer, the placement and content of any signs, and the oral representations from Home Depot employees relating to the damage waiver. As with the UCL and CLRA claims, the individual issues could reasonably be found to predominate over the common questions in the common-law claims, and we affirm the district court's dismissal of both the primary class and proposed subclass one.

## III

We conclude that we have jurisdiction over this appeal despite Berger's stipulation on dismissal after the negative class action ruling. We also conclude that the district court did not abuse its discretion in denying class certification because the record did not show that the requirements of Rule

23(b)(3) were satisfied; common questions did not predominate over individual issues in any of Berger's claims.[3]

**AFFIRMED**.

---

[3] Because we hold that it was not an abuse of discretion for the district court to conclude that Berger's proposed classes do not meet the requirements of Rule 23(b)(3), and Berger did not rely on any other part of Rule 23(b), we need not and do not reach the question of whether the district court abused its discretion in denying certification based on the threshold ascertainability test. Nor do we reach the question whether Rule 23(a) was satisfied. *See Hanon*, 976 F.2d at 508 ("[W]e may sustain the court's ruling [on class certification] on any ground supported by the record."); *Zinser*, 253 F.3d at 1189 (holding that a putative class did not meet the requirements of Rule 23(b)(3) before discussing the elements of Rule 23(a).).